UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANTHONY CARRAWAY, | ) | 1:8-cv-01782-LJO-JLT HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATIONS TO |
| | ) | GRANT RESPONDENT'S MOTION TO |
| v. | ) | DISMISS PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS (Doc. 12) |
| | ) | |
| NEIL H. ADLER, Warden, | ) | ORDER REQUIRING OBJECTIONS TO BE |
| | ) | FILED WITHIN TWENTY DAYS |
| Respondent. | ) | |
| | ) | |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**PROCEDURAL HISTORY**

Petitioner filed the instant petition on November 20, 2008, alleging that the United States Bureau of Prisons ("BOP") refuses to assess Petitioner "under 18 U.S.C. § 3621(b) to determine if he is eligible for placement at a Community Corrections Center."[1]  (Doc. 1, p. 1).  Petitioner alleges that, due to BOP's regulations, he "has not received consideration for placement in a [RRC] even though an assessment under 18 U.S.C. § 3621(b) would allow placement at any time."  (Id., p. 2). Petitioner alleges that BOP "policy conflicts with its authority under Federal law, only giving BOP

---

[1] Community Corrections Centers are now referred to as Residential Reentry Centers ("RRCs").  For consistency, the Court will use the term "RRC" in this Findings and Recommendations.

discretion to grant up to six (6) months in a [RRC] for any Federal inmate sentenced by a Federal District Court." (Id., p. 3). Petitioner asks that the Court "order BOP to immediately in good faith, assess Petitioner...based upon the criteria in 18 U.S.C. § 3621, without reference to BOP policy promulgated in December 2002 and without reference to 28 C.F.R. § 570.20 and 570.21 to determine Petitioner's duration of placement in a [RRC]." (Id.).

On June 1, 2009, Respondent filed the instant motion to dismiss, contending that Petitioner's claims are insufficient to invoke habeas jurisdiction and that the petition should be dismissed for failure to exhaust administrative remedies. (Doc. 12). On June 12, 2009, Petitioner filed his opposition to the motion to dismiss. (Doc. 14).

## FACTUAL HISTORY

At the time of filing of the petition, Petitioner was in the custody of the BOP serving a 120 month prison sentence at the minimum security Prison Camp at the Taft Correction Institution ("TCI"), in Taft, California, for a violation of 21 U.S.C. § 841(A)(1), possession with intent to distribute cocaine base. (Doc. 1, p. 2; Doc. 12, pp. 1-2). Petitioner's projected release date is February 21, 2012. (Doc. 12, p. 2).

## DISCUSSION

### A. Procedural Grounds for Motion to Dismiss

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases. The Ninth Circuit has allowed Respondent's to file a Motion to Dismiss in lieu of an Answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a Respondent can file a Motion to Dismiss after the court orders a response, and the Court should use Rule 4 standards to review the motion. See Hillery, 533 F. Supp. at 1194 & n. 12.

In this case, Respondent's motion to dismiss is based on a violation of lack of subject matter jurisdiction, failure to exhaust administrative remedies, mootness, and failure to state a claim. Because Respondent's motion to dismiss is similar in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default, and because Respondent has not yet filed a formal answer, the Court will review Respondent's motion to dismiss pursuant to its authority under Rule 4.

B. <u>Statutory and Regulatory Background</u>.

The BOP has the authority, under 18 U.S.C. § 3621(b), to designate the location of an inmate's imprisonment. The BOP's policy prior to December 13, 2002, was to exercise its discretion in allowing prisoners to serve part of all of their imprisonment in an RRC. <u>See</u> <u>Rodriguez v. Smith</u>, 541 F.3d 1180, 1182 (9th Cir. 2008). The Department of Justice Office of Legal Counsel ended that practice by issuing a legal opinion that § 3621(b) did not authorize inmate placements in an RRC for an entire term because it did not constitute imprisonment. <u>See id</u>.

The BOP changed its policy on December 20, 2002, by limiting an inmate's eligibility for placement in an RRC to six months or to the final ten percent of his sentence, whichever was shorter. <u>See</u> <u>Rodriguez</u>, 541 F.3d at 1182. The First and Eighth Circuits invalidated that policy because it failed to recognize the BOP's discretion to transfer an inmate to an RRC at any time, as provided in 3621. <u>See id</u>. at 1182-1183. In response, the BOP decided to "exercise its discretion categorically to limit inmate's community confinement to the last ten percent of the prison sentence being served, not to exceed six months." <u>See id</u>. at 1183 (quoting 69 Fed. Reg. 51213). These rules were published at 28 C.F.R. §§ 570.20 and 570.21, and became effective on February 14, 2005. <u>See id</u>.

On April 9, 2008, the President signed into law the "Second Chance Act," a bill which amends the text of 18 U.S.C. § 3624(c). The updated text of § 3624(c)(1) authorizes the BOP to consider placing inmates in RRCs for up to the final twelve months of their sentences, rather than the final six months. Section 3624(c)(4) also clarifies that nothing in § 3624 "shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under § 3621." 18 U.S.C. § 3624(c)(4).

On April 14, 2008, in response to the new legislation, the BOP issued a memorandum for

Chief Executive Officers regarding "Pre-Release Residential Reentry Center Placements Following the Second Chance Act of 2007." (Doc. 12, Ex. 2). This memorandum serves as the BOP's new interim policy and it explicitly rescinds 28 C.F.R. §§ 570.20 and 570.21, the regulations which Petitioner claims improperly restricted the BOP's discretion to place him at an RRC for more than six months.

Under the new policy, inmates are to be individually considered for pre-release RRC placement using the following five factor criteria from 18 U.S.C. 3621(b), which are as follows:

> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence
>     (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>     (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). The memorandum further provides that the BOP must now review inmates for pre-release placement seventeen to nineteen months before their projected release date. (Doc. 12, Ex. 2, p. 3).

On September 4, 2008, the Ninth Circuit decided Rodriguez, holding that 28 C.F.R. §§ 570.20 and 570.21 were invalid because they conflicted with the Congressional intent of § 3621(b) that inmates be considered for placement in or transfer to an RRC based on the five factors contained in § 3621(b). See Rodriguez, 541 F.3d at 1187. The BOP therefore could not reference 28 C.F.R. §§ 570.20 and 570.21 in considering an inmate for RRC placement. Thus, under Rodriguez, the BOP has discretion to transfer an inmate to an RRC at any time. However, Rodriguez does not require the BOP, once it applies the factors of § 3621(b), to grant an inmate's request for immediate transfer to an RRC, nor does it require the BOP to afford an inmate any particular length of RRC placement. See Berry v. Sanders, 2009 WL 789890, at *6-*7 (C.D. Cal. March 20, 2009); Guss v. Sanders, 2009 WL 5196153, *4 (C.D. Cal. Dec. 29, 2009).

Finally, on November 14, 2008, the BOP, in a memorandum from the Assistant Director and General Counsel of the BOP entitled "Inmate Requests for Transfer to Residential Reentry Centers," issued guidance to staff for considering and responding to inmate requests for routine transfer to

1  RRC's.  (Doc. 12, Ex. 3).  When considering a transfer, "prior to the pre-release time frame of 12-
2  months from release, staff must individually consider the request, just as they would any other
3  request for lower security transfer."  (Id., p. 2).  In rendering its decision, staff must utilize the five
4  factors outlined in § 3621(b), and staff "cannot, therefore, automatically deny an inmate's request for
5  transfer to an RRC.  Rather, inmate requests for RRC placement must receive individualized
6  consideration."  (Id.)  The BOP may initiate such transfer at any time, and if an inmate requests a
7  transfer prior to the pre-release transfer time-frame, the review will occur "in conjunction with the
8  [inmate's] next scheduled Program Review."  (Id.).

       C. Subject Matter Jurisdiction.

10  In this motion to dismiss, Respondent argues that the Court lacks subject matter jurisdiction
11 to proceed because Petitioner's claims, even if upheld, do not implicate the fact or duration of
12 Petitioner's confinement, a necessary pre-requisite, according to Respondent, for habeas jurisdiction.
13 (Doc. 12, p. 7).  In support of this proposition, Respondent argues that, in Rodriguez, 541 F.3d 1180,
14 the Ninth Circuit clearly held that placement in a RRC is still incarceration.  From that principal,
15 Respondent proceeds directly to the conclusion that Petitioner's claims do not support habeas
16 jurisdiction because, since they only impact the location of his confinement within BOP's prison
17 system, they cannot impact the duration of his confinement.  For the reasons set forth below, the
18 Court disagrees with Respondent and concludes that the Court has subject matter jurisdiction over
19 this petition.

20  Writ of habeas corpus relief extends to a person in custody under the authority of the United
21 States.  See 28 U.S.C. § 2241.  While a federal prisoner who wishes to challenge the validity or
22 constitutionality of his conviction must bring a petition for writ of habeas corpus under 28 U.S.C.
23 § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must
24 bring a petition for writ of habeas corpus under 28 U.S.C. § 2241.  See, e.g., Rodriguez, 541 F.3d
25 1180(affirming grant of habeas relief where petitioner brought a § 2241 petition to compel the BOP
26 to immediately consider transferring him to a RRC); Montano-Figueroa v. Crabtree, 162 F.3d 548,
27 549 (9th Cir. 1998)(allowing a federal prisoner to use § 2241 to challenge the BOP's restitution
28 policies);  Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998); United States v. Tubwell, 37

1  F.3d 175, 177 (5th Cir. 1994); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.5 (2nd Cir. 1991);
2  United States v. Jalili, 925 F.2d 889, 893-94 (6th Cir. 1991);  Barden v. Keohane, 921 F.2d 476, 478-
3  79 (3rd Cir. 1991);  United States v. Hutchings, 835 F.2d 185, 186-87 (8th Cir. 1987); Brown v.
4  United States, 610 F.2d 672, 677 (9th Cir. 1990).

      Unlike § 2255, § 2241 does not contain language limiting jurisdiction under § 2241 to petitioners who are "claiming the right to be released." 28 U.S.C. § 2255; compare United States v. Thiele, 314 F.3d 399, 401 (9th Cir. 2002)(challenge to restitution order not cognizable under § 2255 because petitioner was not claiming right to be released) with Montano-Figueroa, 162 F.3d at 549 (challenge to timing and amount fine payments cognizable under § 2241's execution clause). Accordingly, § 2241 may be used to challenge the execution of a prisoner's sentence, even where the prisoner does not seek release or to shorten the duration of his confinement.  See, e.g., Rodriguez, 541 F.3d at 1182; Montez v. McKinna, 208 F.3d 862, 865 (10th Cir. 2000)(entertaining petitioner's challenge to his transfer to a private prison as a challenge to the execution of his sentence pursuant to § 2241); see also Montano-Figueroa, 162 F.3d at 549 (reaching the merits of petitioner's § 2241 challenge to the amount and timing of fine payments); United States v. Lemoine, 546 F.3d 1042, 1046 (9th cir. 2008)(entertaining § 2241 challenge to restitution schedule); United States v. Giddings, 740 F.2d 770, 772 (9th Cir. 1984)("Review of the execution of a sentence may be had through petition for writ of habeas corpus under 28 U.S.C. § 2241.").

      Rodriguez, a case Respondent cites for the proposition that the Court lacks jurisdiction, was brought as a petition for writ of habeas corpus and decided by the Ninth Circuit on the merits without discussion of subject matter jurisdiction.  In Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir. 2000), the Ninth Circuit noted in dicta that "petitions that challenge the manner, location, or conditions of a [federal] sentence's execution must be brought pursuant to § 2241 in the custodial court."  (Emphasis supplied).   On the other hand, to the extent a federal prisoner "seeks damages for civil rights violations," the complaint should be "construed as a Bivens action."[2]  Tucker v. Carlson, 925 F.2d 330, 332 (9th Cir. 1991).  In this action, Petitioner does not seek money damages.

---

[2] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971).

1       Although Respondent cites several cases in support of the absence of jurisdiction, including
2 Rodriguez, Ramirez v. Galaza, 334 F.3d 850, 856-859 (9th Cir. 2003), and Preiser v. Rodriguez, 411
3 U.S. 475, 484 (1973),  (Doc. 12, p. 8), none of those cases states that a habeas petition *must*
4 challenge the fact or duration of confinement in order for federal courts to have jurisdiction over the
5 cause.  Indeed, several of Respondent's cases contradict Respondent's own position.  See Rodriguez,
6 541 F.3d at 1182 (affirming grant of relief in action challenging BOP's refusal to transfer inmate to a
7 RRC); Preiser, 411 U.S. at 486 (acknowledging appropriateness of habeas actions for cases in which
8 prisoners are "unlawfully confined in the wrong institution").
9       In Ramirez, the Ninth Circuit addressed the application of the so-called "favorable
10 termination" rule of Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994) and its progeny, and
11 held that a state prisoner's § 1983 challenge to a prison disciplinary conviction could proceed
12 because the challenge, if successful, would not affect the "fact or length of his confinement."
13 Ramirez, 334 F.3d at 852.  The Ramirez court stated that its holding in that case "clarifies our prior
14 decisions addressing the availability of habeas corpus to challenge the conditions of imprisonment."
15 Id. at 858.  While it is true that "the rationale of Heck applies to Bivens actions," Martin v. Sias, 88
16 F.3d 774, 775 (9th Cir. 1996), it is far from clear that the decision in Ramirez vitiates the language in
17 Hernandez suggesting § 2241 as an appropriate vehicle for a federal prisoner to challenge the
18 location of confinement.
19       As the United States Supreme Court has observed, it is frequently difficult to draw the line
20 between claims that are properly brought under § 1983 (or Bivens), and those properly brought under
21 § 2241.  District Attorney's Office for the Third Judicial District v. Osborne, __U.S.__, 129 S.Ct.
22 2308, 2324, 174 L.Ed. 2d 38 (2009).  Respondent's erroneous conclusion regarding habeas
23 jurisdiction springs from the false premise that § 1983 (or Bivens actions) and § 2241 are always
24 mutually exclusive legal avenues.  While it is true that § 1983 (or Bivens) relief does not lie for
25 claims that fall squarely within the "core" of federal habeas, i.e., challenges to the fact or duration of
26 a petitioner's incarceration, Preiser, 411 U.S. at 487; Wilkinson v. Dotson, 544 U.S. 74, 80-81, 125
27 S.Ct. 1242 (2005), the mere fact that the instant petition does not raise a "core" claim does not
28 require the conclusion that the claim can only be brought by way of a civil rights complaint. In the

Court's view, Petitioner's claims lie outside the "core" of federal habeas, but still well within the ambit of § 2241. Thus, the Court concludes that federal courts have jurisdiction to entertain challenges to the BOP's refusal to transfer a prisoner to an RRC facility pursuant to § 2241. See Rodriguez, 541 F.3d at 1182.

Having concluded that habeas jurisdiction extends to the instant petition, the Court further notes that a petitioner filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the petitioner's custodian. Brown, 610 F.2d at 677. Because Petitioner was incarcerated at Taft Correctional Institute ("TCI") at the time of filing the petition, and because TCI is within the Eastern District of California, this Court has jurisdiction to proceed to the merits of the petition. See U.S. v. Giddings, 740 F.2d 770, 772 (9th Cir.1984). Accordingly, the Court finds that it has subject matter jurisdiction over the instant claims.

   D.  Failure to Exhaust Remedies.

Respondent affirmatively asserts exhaustion as a grounds for dismissal. (Doc. 12, p. 3; 9). Respondent proffers a sworn declaration from a Senior Secure Institution Manager at TCI stating that the institution has no record of Petitioner having ever filed for an administrative remedy regarding RRC placement nor any record of Petitioner ever having requested to be reviewed for RRC placement, either at or outside of his scheduled program reviews. (Doc. 12, Exh. 1, p. 3). Petitioner does not allege that he has ever requested an assessment for placement in an RRC, and indeed he explicitly concedes that he has never done so in his opposition to the motion to dismiss when he contends that exhaustion would be futile and should therefore be excused. (Doc. 14, pp. 4; 24).

Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment must first exhaust all administrative remedies. E.g., Liang v. Ashcroft, 370 F.3d 994, 997 (9th Cir. 2004); Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir. 1984); Roviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983). The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement. Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990). Thus, "because exhaustion is not required by statute, it is not jurisdictional." Id. If Petitioner has not properly exhausted his claims, the district court, in its

discretion, may either "excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court." Id. Exhaustion is not required if pursuing those remedies would be futile. Terrell v. Brewer, 935 F.2d 1015, 1019 (9th Cir. 1991).

In Ruviwat, the Ninth Circuit explained why a petitioner must first exhaust his administrative remedies before filing for habeas relief:

> "The requirement of exhaustion of remedies will aid judicial review by allowing the appropriate development of a factual record in an expert form; conserve the court's time becuase of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of an administrative proceedings."

Ruviwat, 701 F.2d at 845.

The BOP has established an administrative remedy program governing prisoner complaints, which is set forth in 28 C.F.R. § 542.10 et seq. First, an inmate must attempt to resolve the issue informally by presenting it to staff before submitting a request for administrative remedy. 28 C.F.R. § 542.13. If dissatisfied with the response, the prisoner may proceed with the formal filing of an administrative remedy request on a BP-9 form. 28 C.F.R. § 542.14. Upon denial by the institution, the prisoner may appeal the decision by filing a BP-10 Appeal with the Regional Director of the BOP. 28 C.F.R. § 542.15. The Regional Director's decision can then be appealed by submitting a BP-11 Appeal to the BOP General Counsel in Washington, D.C., which constitutes the final step in the administrative remedy process. Id. A BP-11 Appeal must contain only issues raised at every lower level of the administrative remedy process. Id. Although the procedure sets forth deadlines at each step of the administrative remedy program, extensions in filing time may be granted. 28 C.F.R. §§ 542.14(b); 542.15(a).

In the Court's view, Petitioner's conclusory allegation that exhaustion would be futile in his case is insufficient to justify excusing the exhaustion requirement. Pursuant to current BOP policy, an inmate may request an assessment for RRC placement at any time. To the extent Petitioner is entitled to relief, the appropriate form of relief would be an order directing the BOP to assess Petitioner for RRC placement consistent with its policies and governing statutes. Petitioner may obtain the same relief this Court could afford by simply requesting consideration for RRC placement, and, in the event his request is denied, by pursuing the administrative remedies set forth in the code

of Federal Regulations.  See 28 C.F.R. §§ 542 et seq.  The Court must presume that, if Petitioner pursues his administrative remedies, the BOP will consider his request consistent with its policies and governing statutes.  See, e.g., Garner v. Jones, 529 U.S. 244, 256, 120 S.Ct. 1362, (2000)("Absent a demonstration to the contrary, we presume the Board follows its statutory commands and internal policies in fulfilling its obligations").

Moreover, full exhaustion should allow the BOP the opportunity to remedy any alleged mistake in light of Rodriguez and the Second Chance Act "before being haled into court."  At a minimum, full administrative exhaustion would further develop the record concerning the BOP's post-Rodiguez, post-Second Chance Act policy toward RRC transfer requests, and how any such policy applies to Petitioner's particular request.   Because Petitioner has an adequate administrative remedy that has not been exhausted, the Court, in its discretion, finds that the petition should be dismissed and that Petitioner should seek to exhaust his administrative remedies before proceedings in federal court.  See Rison, 895 F.2d 535.

Petitioner's opposition to the motion to dismiss does not compel a contrary result.  In his opposition, Petitioner maintains that at his April 2009 Program Review, he requested placement in an RRC but was denied.  (Doc. 14, p. 24).  Petitioner argues that the gravamen of his petition is not that BOP improperly refused to conduct an assessment for RRC placement but whether the BOP "improperly denies his, and other inmate's, request for community placement under § 3621(b) and Rodriguez, based on the constraints embodied in the six-month rules."  (Doc. 14, p. 24).  Petitioner argues that the Court should consider the BOP's "history of intransigence in limiting the period of community corrections" to six months, and that "[n]one of the requests for [RRC] placements longer than 180 days have been approved in the Western Region."  (Doc. 14, pp. 23-24).

Even assuming, arguendo, that Petitioner's allegations were true, that does not establish that exhaustion of administrative remedies would be futile.  Petitioner complains that "some institutions and some regions regularly approved longer than 180-day placements," while the Western Region has "approved of few or no recommendations."  (Doc. 14, p. 24).  Petitioner thus is not contending that denial of more than 180-days' of RRC placement is a uniform BOP policy throughout the United States.  Under such circumstances, and assuming that TCI would deny Petitioner's request for more

than six months' RRC placement, Petitioner could appeal to both the regional and national levels to reverse that decision. Contrary to Petitioner's conclusory allegations, the purported existence of "intransigence" among officials in the Western Region of the BOP does not establish the existence of an illegal BOP policy, nor does it show that the BOP has already formulated a predetermined outcome for any particular placement request Petitioner might make.

For all of the reasons set forth above, Petitioner's failure to exhaust such remedies that might result in a ruling favorable to Petitioner, leads this Court to find that exhaustion should not be excused and that Petitioner should first exhaust all available administrative remedies before seeking habeas relief in this Court.[3]

D. <u>Failure to State a claim.</u>

Finally, Respondent appears to contend both that the petition fails to state a claim because Petitioner has no right to an RRC transfer "just because he requests it," and that, because the BOP has already promulgated new regulations that conform to the requirements of the case law and to § 3621(b), the petition's claims are now moot. (Doc. 12, p. 14). For his part, Petitioner appears to argue that the basis for the petition is not the availability of assessment reviews, but the fact that his request for RRC placement was denied as a result of institutional "intransigence." (Doc. 14, p. 24).

The Court agrees with Respondent that, to the extent that the petition challenges the failure of the BOP to provide RRC placement assessments to individual inmates, the failure of the BOP to employ the proper criteria under § 3621(b) in conducting such assessments, and the refusal of the BOP to consider RRC placement for longer than six months, those claims have been mooted by the policy changes implemented by the BOP and reflected in the amended federal regulations and in the BOP policy memoranda of April 14, 2008 and November 14, 2008.

---

[3] The Court also notes that Respondent urges dismissal because the Prisoner Litigation Reform Act ("PLRA") provides that no action "shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997(a). (Doc. 12, p. 9). The PLRA's exhaustion requirement, however, has no application to habeas corpus cases. See, e.g., <u>Skinner v. Wiley</u>, 355 F.3d 1293, 1294 (11th Cir.), *cert. denied*, 541 U.S. 1036, 124 S.Ct. 2112 (2004); <u>Carmona v. United States Bureau of Prisons</u>, 243 F.3d 629, 634 (2nd Cir. 2001); <u>Juvera v. Banks</u>, 2008 WL 5115228 at *1, n. 2 (C.D. Cal. Dec. 3, 2008; <u>Arnett v. Sanders</u>, 2009 WL 3045808, *2 (C.D. Cal. Sept. 21, 2009). Indeed, the PLRA's relevance to this case is premised entirely on Respondent's argument, already considered and rejected by this Court, that the petition's claims are more properly brought as a civil rights case, not a habeas case. Accordingly, the Court rejects this basis for dismissal.

1  "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70, 104 S.Ct. 373 (1983). A case becomes moot when "it no longer present[s] a case or controversy under Article III, § 2, of the Constitution." Wilson v. Terhune, 319 F.3d 477, 479 (9th Cir. 2003)(quoting Spencer v. Kenna, 523 U.S. 1, 7, 118 S.Ct. 978 (1998)). "In order to satisfy the case-or-controversy requirement, the parties must have a personal stake in the outcome of the suit throughout all stages of federal judicial proceedings." Id. In addition, "[t]o satisfy the Article III case or controversy requirement, a litigant must have suffered some actual injury that can be addressed by a favorable judicial decision." Iron Arrow, 464 U.S. at 70.

To the extent that Petitioner contends that the BOP has failed to afford him regular RRC assessments or, in making such assessments, has improperly relied upon the discredited 2002 regulations, the changes mandated by Rodriguez and the Second Chance Act, as reflected in the amended BOP regulations and the two BOP policy memoranda, have provided the remedy Petitioner seeks. Thus, there is no relief this Court can provide Petitioner. Accordingly, there is no case or controversy and the claims in the petition are thus moot. Iron Arrow, 464 U.S. at 70.

To the extent that Petitioner is, as his opposition to the motion to dismiss indicates, simply dissatisfied with the result of the assessment, his claim is not moot. However, Petitioner has failed to state a federal habeas claim in this regard. As discussed above, the BOP "may at any time...direct the transfer of a prisoner from one penal or correctional facility to another." 18 U.S.C. § 3621(b); see Rodriguez, 541 F.3d at 1185. Also as previously discussed, when the BOP does exercise its discretion to analyze whether to transfer an inmate, it must consider the statutorily enumerated factors contained § 3621(b). See 18 U.S.C. § 3621(b); Rodriguez, 541 F.3d at 1186.

Petitioner has not established that the BOP relied on the prior, invalid 2002 regulations, nor does Petitioner address the possibility that the BOP utilized its discretion under § 3621(b) not to consider Petitioner for transfer. Petitioner contends that the Western Region of the BOP has a history of intransigence in refusing to grant RRC placements longer than six months, but provides nothing more than anecdotal evidence of such an unofficial policy. In sum, Petitioner was afforded the assessment required by federal law, the assessment was conducted in accordance with

appropriate federal regulations and statutes, and the assessment was conducted with reference to the appropriate federal criteria. Without more, the mere fact that Petitioner is unhappy with the outcome of that assessment is not a sufficient basis on which to claim habeas relief. See Jones v. Gomez, 66 F.3d 199, 204-205 (9th cir. 1995)(finding a petitioner's conclusory allegations did not meet the specificity requirement); James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

## RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS that Respondent's Motion to Dismiss the petition (Doc. 12), be GRANTED.

This Findings and Recommendations is submitted to the United States District Court Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty (20) days after being served with a copy of this Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **January 15, 2010**                         /s/ Jennifer L. Thurston
                                                                        UNITED STATES MAGISTRATE JUDGE